**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TOMEKA JACKSON,** | Civ. No. 2:14-cv-02591 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Tomeka Jackson brings this action pursuant to 42 U.S.C. § 1383(c)(3) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title XVI application for Social Security Income. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

I. **LEGAL STANDARDS**

A. **The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant was engaging in substantial activity during the relevant period. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity (or "RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security

1

Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

Tomeka Jackson is a thirty-seven-year-old female who resides in New Jersey. She seeks a finding of disability on the basis of the following impairments: (1) sleep apnea; (2) asthma; (3) diabetes; (4) bi-lateral carpal tunnel syndrome; (5) hypertension; (6) obesity; (7) irritable bowel syndrome and (8) an effective disorder. Administrative Transcript ("Tr.") 16. Jackson has a high school diploma, but has not worked since 2001. Tr. 166.

On November 18, 2010, Jackson filed a Title XVI application for Social Security Income ("SSI"), alleging disability as of October 30, 2009. Tr. 14. On April 25, 2011, the Social Security Administration ("SSA") denied Jackson's application, and on October 3, 2011, SSA denied Jackson's request for reconsideration. Tr. 97-104. Jackson then requested a hearing before an Administrative Law Judge ("ALJ") and her case was assigned to ALJ Donna Krappa. *See* Tr. 105-11. After reviewing the evidence and holding a hearing, ALJ Krappa issued a December 21, 2012 decision which concluded that Jackson was not disabled within the meaning of the Social Security Act and therefore was not entitled to SSI. Tr. 22. The Appeals Council confirmed that decision on February 19, 2014. Tr. 1. Jackson now appeals.

### A. Summary of the Record

The record includes medical records from Hyeun Park, M.D., emergency room treatment reports, and Residual Functional Capacity ("RFC") assessments from Mary McLarnon, MD, Jose Rabelo, MD, and Robert Eckardt, PhD. The record also includes a psychological evaluation by Dr. Ernesto Perdomo, testimony from vocational expert ("VE") Patricia Sasona, and Jackson's own testimony.

Jackson sought medical treatment from Dr. Park on numerous occasions. Dr. Park's treatment notes from April 2010 indicate that Jackson suffers from, among other things, hypertension, asthma, obesity, carpal tunnel, and irritable bowel syndrome. Tr. 266. Later treatment notes report that Jackson has shortness of breath and obstructive sleep apnea. Tr. 272. In December 2011, Dr. Park described Jackson as a "well-developed, morbidly obese patient in no acute distress." Tr. 335. A June 2012 report from Dr. Park stated that Jackson suffers from obesity and hypertension, and that he advised Jackson to improve her diet and exercise. Tr. 341.

The record also consists of various RFC assessments. First is an assessment from Dr. Mary McLarnon. Tr. 273. Dr. McLarnon concluded that Jackson had the RFC to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; push and/or pull for an unlimited duration within those weight restrictions; and stand and/or walk for at least 2 hours. Tr. 274-75. Dr. McLarnon further determined that Jackson had no limitations in the ability to climb, balance, stoop, kneel, crouch, or crawl; however, her RFC noted that Jackson was limited in some manipulative functions. Tr. 276.

Dr. Eckhardt performed an RFC assessment based on Jackson's mental health issues. Tr. 304. Dr. Eckhardt noted that in her interview, Jackson was coherent and that she retained the ability to understand. Tr. 320. He concluded that Jackson suffered only mild functional limitations due to psychological issues, with the exception of a moderate limitation in maintaining concentration, persistence or pace. Tr. 314.

Dr. Ernesto Perdomo conducted a psychological evaluation of Jackson. Tr. 297. His report found that Jackson's memory, both long and short-term, "was good." He further concluded that her concentration was fair, her vocabulary adequate, and her intelligence in the low-average range. Tr. 299. He concluded that Jackson's dominant problems were mostly medical (*i.e.*, physical), and that her medical issues exacerbated her depression. Tr. 300.

Jackson also testified about her medical condition and overall wellness. She informed the ALJ that she has difficulty walking and sitting for extended periods of time. Tr. 38-39. She further testified that she has difficulty lifting objects and requires the use of air tubes while sleeping. Tr. 39-41. In 2011, Jackson filled out a Function Report indicating that she helps her three children get ready for school, cooks meals, uses public transportation, and speaks with her mother on the phone. Tr. 191-96.

There was also VE testimony at the hearing. Tr. 71. VE Patricia Sasona testified that someone of Jackson's age, RFC, and educational background would be able to work as a document preparer, addresser, and final assembler. Tr. 71-72.

Finally, the record includes diagnostic reports and information regarding Jackson's trip to the emergency room. Notably, records from a 2011 emergency room visit show that Jackson suffered from a productive cough. Tr. 246. X-rays taken in 2010 show minor

swelling of Jackson's left foot, while chest x-rays from 2010 were reported as "normal." Tr. 255.

### B. The ALJ's Decision

At step one, the ALJ found that Jackson did not engage in substantial activity during the relevant time period. Tr. 16. At step two, the ALJ concluded that Jackson had the following severe impairments: irritable bowel syndrome; sleep apnea; asthma; diabetes; bi-lateral carpal tunnel syndrome; hypertension; obesity; and an affective disorder. Tr. 16.

At step three, the ALJ concluded that Jackson's impairments did not meet nor were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. In doing so, the ALJ specifically noted that neither a single impairment, nor a combination of impairments, were equivalent to any listed impairments. The ALJ also noted that she evaluated Jackson's obesity in conjunction with her other severe impairments. Tr. 18. Moreover, the ALJ found that Jackson's mental impairments were not severe because they did not meet or medically equal the criteria of listing 12.04. *Id*.

At step four, the ALJ determined that Jackson had the RFC to perform sedentary work. Specifically, the ALJ concluded that Jackson could lift 10 pounds occasionally; stand/walk for 2 hours; sit for 6 hours; and perform frequent (as opposed to unlimited) gross and fine manipulation. Moreover, the ALJ determined that that Jackson could only perform jobs that (1) do not require the use of ladders, ropes, or scaffolds; (2) requires only occasional use of ramps and stairs, and only frequent balancing stooping and crouching. With respect to other limitations, the ALJ found that Jackson was capable of only unskilled and repetitive work that did not require frequent changes in decision making; if such work was production-based, production must be monitored only at the end of the day. Finally, any job must provide Jackson with ready access to the bathroom. Tr. 28.

The ALJ based her step four finding on a variety of factors. She noted that "treatment for [Jackson's] multiple impairments has been conservative." Tr. 20. Additionally, the ALJ noted that Jackson's diabetes have not caused organ damage and that her hypertension is well-controlled. With respect to mental health issues, the ALJ noted that Jackson had never sought mental health treatment. *Id*. Moreover, Jackson had not frequently sought emergency care for her asthma and exams revealed that her lung condition was normal. Finally, the record showed that Jackson takes care of her children, prepares meals, and travels independently. Taking that together with the medical evidence, the ALJ concluded that Jackson is capable of sedentary work. Tr. 21.

At step five, the ALJ found that there were a significant number of jobs in the national economy that Jackson could perform. In doing so, the ALJ relied on the testimony of VE Patricia Sasona, and noted that Jackson could perform the jobs of document preparer, addresser, and final assembler. Tr. 21-22. Therefore, according to the ALJ, Jackson was not disabled as defined in the Social Security Act. Tr. 23.

**III. DISCUSSION**

Jackson challenges the ALJ's determination that she was not disabled. Specifically, Jackson argues that the ALJ committed the following errors: (1) failing to assess the combined effects of Jackson's impairments at step 3; and (2) failing to sufficiently articulate the rationale for the RFC assessment at step 4.

### A. Did the ALJ Fail to Assess the Combined Effects of Jackson's Impairments at Step 3?

Jackson argues that the ALJ's step three analysis was flawed because it did not account for the combined effects of Jackson's impairments. A claimant will be disabled if his or her impairment(s) meets or equals one of the impairments listed in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Where a claimant has multiple impairments, as is the case here, an ALJ will look to see whether the combination of impairments is of at least equal medical significance to a listed impairment. 20 C.F.R. §404.1525(c)(3). In making a step 3 determination, an ALJ must state his or her reason for the decision; a mere conclusory statement will not do. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2008) (conclusory statements by an ALJ are beyond meaningful judicial review). However, the ALJ is not required to adhere to any particular format or language when conducting his or her analysis. *See Poulos v. Commissioner of Social Sec. Admin.*, 474 F.3d 88, 93 (3d Cir. 2007).

Here, the ALJ's nine-paragraph assessment at step 3 assessed the combined effect of Jackson's impairments and was in no way conclusory. First, the ALJ explicitly noted that she was evaluating Jackson's impairments, both individually and in combination. Tr. 18. Indeed, although obesity is not a specifically listed impairment, the ALJ evaluated how obesity may affect Jackson's other impairments that do have listings. Additionally, the ALJ identified the specific listings she evaluated in making her step 3 determination. And unlike the conclusory statement that required a remand in *Burnett*, the ALJ here explained that evidence on the record – most notably, reports from various physicians – did not support a finding that Jackson's impairments were equivalent to any listed impairment. Tr. 18-19. The Court therefore concludes that the ALJ's decision at step 3 was well reasoned and supported by substantial evidence.[1]

---

[1] Jackson further argues that the ALJ failed to properly evaluate certain psychological limitations at step 3. The Court disagrees. Jackson had the burden of proving that she possessed mental impairments that meet both the "A" and "B" Paragraph criteria, or the "C" Paragraph criteria under Listing 12.04. Noting the requirements articulated in 20 C.F.R. Part 404, Subpart P, App. 1 § 12.04, the ALJ articulated specific reasons for why Jackson's impairments did not meet those criteria. Those reasons were supported by substantial evidence on the record.

### B. Did the ALJ Sufficiently Articulate the Rationale for her RFC Assessment at Step 4?

Jackson also argues that the ALJ erred at step 4. Specifically, Jackson contends that the ALJ failed to explain how the evidence on record informed her decision, thereby failing to meet the requirements articulated in *Burnett* and *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). An ALJ's explanation of the evidence must accompany the benefits determination. *Cotter*, 642 F.2d at 704-05. This requirement is commonly referred to as "the *Cotter* Doctrine." While a benefits determination must be based on "meaningful judicial review," the commissioner need not engage in an exhaustive discussion of every piece of evidence in the record. *Burnett*, 220 F.3d at 119; *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Moreover, where "there is substantial evidence supporting the Commissioner's decision…the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Sec.*, 89 Fed.Appx. 771, 774 (3d Cir. 2004).

The Court concludes that the ALJ's step four determination was premised on meaningful judicial review and supported by substantial evidence. The ALJ noted that Jackson suffered from multiple impairments that produced a variety of detrimental symptoms. Tr. 20. However, after reviewing the record, the ALJ found that Jackson was nonetheless capable of sedentary work. In doing so, the ALJ pointed out that Jackson's asthmatic condition did not require frequent emergency visits and that x-rays showed her lung function to be normal. Tr. 21. Additionally, the decision emphasized that Jackson's treatment for her impairments has been generally conservative. Moreover, the ALJ pointed out that objective medical evidence supported her RFC finding, including records describing Jackson's hypertension as "well-controlled" and other medical evidence showing that Jackson's diabetes has not resulted in any organ damage. Finally, the ALJ reasoned that Jackson was able to engage in a variety of activities, including taking care of her children, preparing meals, and traveling independently. Tr. 21. In light of the foregoing, the Court finds that the ALJ explained the reasons for her RFC assessment.[2] Additionally, it further finds that the ALJ's assessment is supported by substantial evidence.[3]

---

[2] Jackson argues that the ALJ ignored the VE's responses to hypotheticals in which Jackson would require additional bathroom breaks. However, the ALJ's RFC – which was supported by substantial evidence – determined that Jackson would require only ready access to a bathroom. *See Jones v. Barnhart*, 364 F.3d 501, 506 (3d Cir. 2004). Moreover, the ALJ properly included that limitation in her hypothetical to the VE. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).

[3] Jackson contends that she did not have a sufficient opportunity to cross-examine the VE because the hearing was cut short. However, "[a] claimant in a disability hearing is not entitled to unlimited cross examination, but rather such cross-examination as may be required for a full and true disclosure of the facts." *Bryant v. Brown*, 683 F.Supp. 95, 100 (D.N.J. 1988) (citations and quotations omitted). Therefore, the fact that the ALJ ended the hearing because she was feeling

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 9, 2015**

---

ill does not mean that the decision must be vacated. After reviewing the record, the Court concludes that Jackson had ample opportunity to thoroughly cross-examine the VE.